UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENDAN PEACOCK, | No. 2:18-cv-00568 DJC CKD |
| Plaintiff, | |
| v. | <u>ORDER</u> |
| PABST BREWING CO., LLC, | |
| Defendants. | |

Plaintiff Brendan Peacock brought this action alleging that Defendant misled Plaintiff and others by marketing and selling "The Original Olympia Beer" as using naturally filtered, artisan water from Tumwater, Washington (a suburb of Olympia, Washington) despite the product being brewed elsewhere in the country using lower quality water and brewing methods. Defendant now brings a motion for summary judgment arguing that Plaintiff has failed to present evidence that Defendant's marketing of the product was likely to deceive a reasonable consumer, Defendant has brought evidence that the product's label was, in fact, not likely to deceive a reasonable consumer, and Plaintiff has not provided evidence to support restitution damages. For the reasons stated below, the Court grants Defendant's motion for summary judgment.

////

# BACKGROUND

## I. Procedural History

Plaintiff originally filed this action on March 15, 2018. (*See* ECF No. 1.) The current operative complaint, the Second Amended Complaint ("SAC"), was filed on September 19, 2019 (SAC (ECF No. 30)) and, after District Judge Troy L. Nunley denied a motion to dismiss, Defendant filed an answer (ECF No. 37). At the close of class certification discovery, Plaintiff filed a Motion to Certify Class (Mot. to Certify Class (ECF No. 52)) which Judge Nunley denied (Order Den. Mot. to Certify Class (ECF No. 62)).[1] After additional discovery was conducted, Defendant filed the present Motion for Summary Judgment. (Def.'s Mot. (ECF No. 71).) Plaintiff has opposed (Pl.'s Opp'n (ECF No. 72)), Defendant has filed a reply (Def.'s Reply (ECF No. 75)), and the matter was submitted without oral argument pursuant to Local Rule 230(g) (*see* ECF No. 76).

## II. Allegations in the SAC

In Plaintiff's SAC, Plaintiff alleges that Defendant's product, The Original Olympia Beer ("Olympia Beer"), was originally brewed in Tumwater, Washington, a suburb synonymous with Olympia, Washington, but that in 2003 Defendant closed down production in Tumwater and instead began to "contract-brew" Olympia beer "at different locations throughout the country using lower quality water and mass-produced brewing methods."[2] (SAC ¶¶ 1–3.) Plaintiff claims that despite moving to different locations as well as using different or lower quality water and mass-production brewing methods, Defendant continued to market and sell the product

---

[1] Olympia Beer was discontinued by Defendant in 2021. Based on the fact that the product was no longer in production, Judge Nunley determined that Plaintiff lacked standing to seek injunctive relief and denied certification of a Rule 23(b)(2) class as a result. (Order Den. Mot. to Certify Class at 5.)

[2] According to the allegations in the SAC, Capital Brewing Company began brewing Olympia Beer began in 1896 and, as a result of mergers, acquisitions, and consolidations, Defendant eventually acquired the company responsible for producing Olympia Beer in 1999. (SAC ¶ 8–10.) As noted previously, Defendant discontinued production and sale of Olympia beer in 2021, while this suit was ongoing.

under the "The Original Olympia Beer" name, "directly and falsely suggesting to the consumer that the water in the beer is from the 'original' source, *i.e.*, water from the Olympia area of Washington State." (*Id.* ¶¶ 12-14.) Plaintiff also contends that Defendant's usage of the "It's the Water" slogan and the depiction of the "unique waterfalls from the (now) closed brewery from the Olympia area" on the Olympia Beer packaging "create an impression in the mind of consumers that the beer is still brewed using water from the Olympia area of Washington State." (*Id.* ¶¶ 14-15.) Plaintiff also briefly points to the website and social media accounts owned by Defendant as helping to create a false impression including a description of the product on the website that states in part "It's the water" and a social media post stating "It really is the water #OlympiaBeer" with a picture of a can of Olympia Beer "in front of waterfalls that look just like the waterfalls that were connected to Defendant's (now) closed brewery in the Olympia area of Washington State." (*Id.* ¶¶ 16-17.)

Plaintiff was exposed to Defendant's "marketing and advertising practices" for Olympia Beer as described above. (*Id.* ¶¶ 22-23.) On April 21, 2017, Plaintiff purchased Olympia Beer from a Grocery Outlet location. (*Id.* ¶ 21.) Plaintiff allegedly also purchased the product "several times per year" and drinking Olympia Bear "has been Plaintiff's family tradition for many years and the story of the uniqueness and value of the artesian water has been passed down through oral tradition." (*Id.* ¶¶ 21, 24-25.)

Based on the above allegations, Plaintiff brought a single claim for violation of California Business and Professions Code § 17200, also known as the Unfair Competition Law or UCL.[3] (*Id.* ¶¶ 40-48.) These claims were originally brought by

---

[3] As pled, the SAC is somewhat unclear on Plaintiff's exact claim. While the SAC is clear that Plaintiff's claims are under the UCL and contains discussion of both the "unfair" and "fraudulent" prongs of the "business act" portion of the UCL, the SAC also contains what might be a reference to the "unfair, deceptive, untrue or misleading advertising" portion of the UCL. (SAC ¶¶ 44-46.) The SAC also contains a citation to California Business and Professions Code § 17500, often referred to as the "False Advertising Law" or "FAL", which is a section of the California Business and Professions Code separate from the UCL. (SAC ¶ 42.) A violation of the FAL also necessarily is a violation of the UCL but Plaintiff has not brought a separate FAL claim. *See Moor v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1016 (9th Cir.

Plaintiff on behalf of himself and a purported class of those similarly situated. (*See Id*. ¶¶ 31-39.) However, as previously noted, class certification was denied by Judge Nunley in a prior order. (*See* Order Den. Mot. to Certify Class.)

**MOTION FOR SUMMARY JUDGMENT**

**I.  Defendant's Motion for Summary Judgment**

Defendant's arguments in favor of summary judgment can be grouped into two broader points. First, Plaintiff has presented no evidence that a reasonable consumer is likely to be deceived by Defendant's marketing of Olympia Beer while Defendant has presented evidence showing a reasonable customer would not be deceived. Second, Plaintiff cannot establish economic injury as he has not presented any evidence of economic injury, his claims are of de minimis monetary value, and Plaintiff is not entitled to injunctive relief.

On the first point, Defendant argues that Plaintiff has failed to present "even a shred of evidence" to show that the "Challenged Label Aspects"— those aspects of the Olympia Beer packaging that Plaintiff specifically noted in the SAC – would be deceptive to a reasonable consumer. (Def.'s Mot. at 4.) Defendant notes that Plaintiff has not designated any expert witnesses (*id*. at 6) nor presented any evidence to establish "how any other consumer interpreted the Challenged Label Aspects, a probability that any other consumer shares the same (unreasonable) interpretation as Plaintiff, or that the Challenged Label Aspects factored into any other consumer's purchasing decision" (*id*. at 4 (emphasis removed)). Defendant also argues that they

---

2020). As constructed, it appears Plaintiff's claims are UCL claims under the "unfair" and "fraudulent" prongs but this does not influence the ultimate outcome of this order. Whether these claims are brought under the business act portion of the UCL, the advertising portion of the UCL, or the FAL, the "reasonable consumer" test discussed below would apply. *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir.1995) for the proposition that "the false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer" and citing *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 506-07 (2003) for the proposition that FAL claims are analyzed by the effects of advertisement on "a reasonable consumer.") Thus, regardless of whether Plaintiff's claims were actually intended to be brought under another portion of the UCL or under the FAL, the analysis concerning whether Plaintiff has presented evidence that satisfies the reasonable consumer test would remain the same.

have provided affirmative evidence that the marketing used for Olympia Beer was not misleading to a reasonable consumer in the form of a consumer survey and analysis of that survey by an expert. (*Id.* at 7.) In opposition, Plaintiff argues that there exists a dispute of fact about whether consumers were deceived by Defendant's marketing. (Pl.'s Opp'n at 4.) Plaintiff contends that "substantial evidence" exists that consumers would be misled "including Defendant's own testimony about the point and method of showing the label to consumers in the store on shelves, the 'historical' references described by Defendant's own witness, and the labelling and marketing of the beer itself." (*Id.* at 12.)

Defendant's second argument, that Plaintiff has no evidence supporting a monetary award, is an amalgam of three arguments: (1) Plaintiff has not presented substantial evidence supporting an award of damages under the UCL as Plaintiff only has a single $4.99 recipe for purchase of Olympia Beer and has not established the existence of a premium for Olympia Beer or that he paid that premium due to the Defendant's misrepresentations (Def.'s Mot. at 17–18), (2) Plaintiff's claims are of *de minimis* value as the only reliable evidence is a single $4.99 receipt (*id.* at 19–20), and (3) Plaintiff lacks standing to seek injunctive relief as class certification was denied (*id.* at 11). Plaintiff first opposes on the ground that Judge Nunley's order denying certification and finding Plaintiff can no longer obtain injunctive relief "is legally unsound . . . ."[4] (Pl.'s Opp'n at 8–9.) Plaintiff further argues that he is "not limited to a 'price premium' based remedy in seeking restitution[]" but that he may seek disgorgement of profits. (*Id.* at 10 (emphasis removed).) Finally, Plaintiff argues that his claims are not *de minimis* because "Defendant's conduct was systemic and entailed the deceptive marketing of a product to the general public, not just Plaintiff,

---

[4] Plaintiff also argues that Judge Nunley's order "should be reconsidered by the Court." (ECF No. 8–9.) Plaintiff has not filed a motion seeking reconsideration of the prior order. The Local Rules clearly set out the requirements for seeking reconsideration of a prior order. Local Rule 230(j). Plaintiff's request, made briefly in the middle of an opposition to Defendant's Motion for Summary Judgment, is not proper under these rules. As such, it will not be considered. Any application for reconsideration must be made by formal motion and comply with the requirements of Local Rule 230(j).

for many years on a nationwide basis[]" and because Plaintiff provided "unrebutted testimony . . . that he purchased the product hundreds of times based on the false advertising. " (*Id.* at 11.)

## II. Legal Standard

The Federal Rules of Civil Procedure provide that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. *Celotex*, 477 U.S. at 325. Therefore, the "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party[,]" or, conversely, "whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–52 (1986). But "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Id.* at 247–48. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

On summary judgment, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574. 585 (1986). To meet its burden, either party must "(A) cit[e] to particular parts of materials in the record, . . . or (B) show[ ] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

For the non-moving party to succeed and avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party must put forth more than "a scintilla of evidence in support of the [party's] position . . . ." *Anderson*, 477 U.S. at 252. Rather, the non-moving party must produce enough evidence such that "the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, for the moving party to succeed, the Court must conclude that no rational trier of fact could find for the non-moving party. *Matsushita*, 475 U.S. at 587. However, so as not to "denigrate the role of the jury[,] . . . [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and so the Court draws all reasonable inferences and views all evidence in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *see Matsushita*, 475 U.S. at 587–88.

### III.   Analysis

Defendant is entitled to summary judgment as Plaintiff has failed to present any evidence from which this Court can find that a reasonable consumer is likely to be deceived by Defendant's marketing of Olympia Beer.

The UCL prohibits ". . . any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . ." with each of these providing a separate theory of liability. Cal. Bus. & Prof. Code § 17200; *see Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Plaintiff's claims were brought under the "unfair" and "fraudulent" prongs of the UCL. (SAC ¶¶ 45–46.) Claims brought under these prongs are governed by a "reasonable consumer" test that requires that the plaintiff "show that members of the public are likely to be deceived." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008)

(quotation marks and citations omitted); *see In re Trader Joe's Tuna Litigation*, 289 F.Supp.3d 1074, 1088 (C.D. Cal. 2017) ("False advertising claims under . . . the fraudulent and unfair prongs of the UCL are governed by the reasonable consumer standard."). To do so, the plaintiff must produce evidence that shows "a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1026 (9th Cir. 2008) (citing *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003)). This can be done with "surveys and expert testimony regarding consumer assumptions and expectations" but these are not always necessary as in some situations "anecdotal evidence may suffice[.]" *Id.* However, evidence of just "a few isolated examples of actual deception" is not sufficient. *Id.* (citations quotation marks removed). "[A] plaintiff does not carry the burden of demonstrating a likelihood 'of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care,' simply by describing his or her own personal, alleged misunderstanding or confusion." *Schramm v. JPMorgan Chase Bank, N.A.*, No. LA 09-cv-09442-JAK, 2014 WL 12633527, at *10 (C.D. Cal. July 10, 2014); *see Clemens*, 534 F.3d at 1026 (finding that a Plaintiff offering "only evidence concerning his personal experience" was insufficient evidence to satisfy a reasonable consumer standard); *see also Morales v. Kraft Foods Group, Inc.*, No. LA 14-cv-04387-JAK (PJWx), 2016 WL 11743532, at *9 (C.D. Cal. Dec. 2, 2016) ("[A]lthough Plaintiffs' testimony is some evidence that the labels may have been misleading, it is not sufficient to establish a genuine issue of fact as to whether 'a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'").

   Here, Defendant contends there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law as Plaintiff cannot meet the reasonable consumer test. Defendant presents evidence that a reasonable consumer would not be deceived by Defendant's marketing in the form of consumer surveys and the conclusions of Defendant's expert, Dr. Kent D. Van Liere, based on those

surveys. (*See* Def.'s Mot. at 1–2.) The two surveys conducted were a survey for prior Olympia Beer purchasers to determine their reasons for purchasing Olympia Beer and an advertising survey where respondents were shown one of two versions of an Olympia Beer can with one version being as it exists now and the "control" being a version without the "challenged elements" of the label. (Survey Report of Dr. Van Liere (ECF No. 51-1) at 6–7.)

Per Dr. Van Liere's report, of the 185 respondents to the prior consumer survey, no respondent mentioned the water used to brew Olympia Beer as their reason for first purchasing Olympia Beer. (*Id.* at 6.) Only 10 respondents (roughly 5% of total respondents) indicated the "geographic origin of the beer" as part of their reasoning for their first purchase. (*Id.*) These reasons were similarly low for respondents who had made subsequent purchases. (*Id.*)

In the advertising survey, only 4, or approximately 2%, of the 202 respondents who were shown the actual Olympia Beer packaging mentioned "the source or origin of the water used to brew the beer as a message conveyed by the product's label." (*Id.* at 7.) 2 of the 196 respondents in the control group, who were shown the label without the challenged elements, also "mentioned the source or origin of the water[]" thus indicating that "there [was] no meaningful difference between the test and control condition . . . ." (*Id.*) Similarly, a roughly equal percentage of respondents from the two groups "mentioned that the Pacific Northwest, Washington, or Olympia/Olympia Falls was a message conveyed by the label[,]" and there was only a 3% difference between the control and test groups (62% for the test group and 59% for the control group) in respondents who thought "Olympia Beer was brewed with artesian water from Olympia, Washington." (*Id.* at 7–8.)

Based on these and other results of the survey, Dr. Van Liere concluded that "the reasons purchasers offer for originally purchasing and subsequently purchasing Olympia Beer do not support Plaintiff's claim that "consumers are misled by Defendant into purchasing and/or consuming 'The Original Olympia Beer' based on

the false impressions that the water in the beer is from the Olympia area of Washington State[]" and "and there is no meaningful evidence that purchasers in the relevant population are misled by the elements of the Olympia Beer label that Plaintiff claims are misleading, or that these challenged elements influenced consumer decisions to purchase the product at issue in this matter." (*Id.* at 28.)

In addition to affirmative evidence, Defendant also argues that "Plaintiff's only evidence of alleged likelihood of deception is his own individual and self-serving allegations and deposition testimony about his own subjective and unreasonable interpretation of the Challenged Label Aspects . . ." and that Plaintiff has no further evidence. (Def.'s Mot. at 13.) Defendant notes that in response to Defendant presenting expert evidence to the contrary, "Plaintiff never deposed Pabst's expert witness nor challenged any of his findings or conclusions[,]" and has instead only relied on his own testimony. (*Id.* at 2.)

Given the above, Defendant has met their initial burden of establishing the absence of any genuine issues of material fact. *Celotex*, 477 U.S. at 323. Defendant has both presented evidence that a reasonable consumer would not be misled, an essential element of Plaintiff's claim, and shown that there is an absence of evidence supporting Plaintiff's case. *Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Companies, Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000) ("To carry its burden of production, the moving party must either: (1) produce evidence negating an essential element of the nonmoving party's claim or defense; or (2) show that there is an absence of evidence to support the nonmoving party's case.") As Defendant has met their initial burden, the burden shifts to Plaintiff and the Court must now turn to Plaintiff's argument and evidence to determine whether he has established that there is in fact a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Nissan Fire*, 210 F.3d at 1103.

In his opposition, Plaintiff's only cites three pieces of evidence supporting that reasonable consumers were deceived by the Olympia Beer label: "[1.] Defendant's

////

own testimony . . . , [2.] the 'historical' references described by Defendant's own witness, and [3.] the labelling and marketing of the beer itself."  (Pl.'s Opp'n at 8.)

The second piece of evidence concerning "historical references" described by Defendant's witness seems to be a reference to statements made by Michelle Barley, Defendant's designated representative, *see* Fed. R. Civ. P. 30(b)(6), during her deposition.  During that deposition, Plaintiff's counsel asked Barley "[w]hat is Pabst trying to convey with the marketing slogan ['It's the Water']?"  (Deposition of Michelle Barley at 40:8–9.)  Barley responded "[y]eah, I can't say there's any necessary meaning behind it, other than it's a historical reference to the brand."  (*Id.* at 40:11–13.)  When asked to clarify what "historical reference" she meant, Barley responded, "[i]t is a slogan from the company since its founding."  (*Id.* at 41:16–17.)  Later, Barley also stated that she did not believe it was reasonable for a consumer to assume that Olympia Beer was from Olympia, Washington based on "the fact that the brand says 'Original,' it says 'Olympia,' it says, 'It's the Water,' and it has a waterfall depicting a geographical location" stating that "I don't think there's anything misleading about the package.  'The original' can legitimately mean anything. Olympia Beer is a brand.  It's not a designation of where it's brewed, and 'It's the Water' can genuinely mean any source of water."  (*Id.* at 56:19–57:11.)  Barley clarified that by "genuinely" she did not mean marketing studies but that she was "simply stating that we use 'It's the Water' as a historical slogan.  Where a water – or where water comes from to brew any beer, not just Olympia, is completely up to a consumer or a shopper to speculate on.  It's not something that we promote."  (*Id.* at 57:15–19.)  She also added that the historical slogan "refer[ed] to where the beer used to be brewed, and the water source that was near it's [sic] brewery."  (*Id.* at 57:22–23.)

This testimony from Barley about the "historical reference" of the "It's the Water" slogan, does not help Plaintiff meet his burden under the reasonable consumer test.  While this evidence might be relevant information to establishing the reason why certain label elements could potentially be seen as misleading, Plaintiff is

11

responsible for presenting evidence that shows Defendant's marketing of Olympia Beer had "a likelihood 'of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Clemens*, 534 F.3d at 1026.  This evidence about the historical source of Olympia Beer's brand and the "It's the Water" slogan does nothing to establish that likelihood.

Similarly, the actual content of Olympia Beer's label and marketing, the third piece of evidence identified by Plaintiff (*see* Pl.'s Opp'n at 8), might be relevant background information but it does not create a genuine dispute over whether those elements are likelihood of those elements to confound an appreciable number of prudent purchasers exercising ordinary care.  As such, this evidence does not help Plaintiff meet his burden to satisfy the reasonable consumer test.

The only other piece of evidence brought by Plaintiff, Plaintiff's own testimony about his personal experience and belief that he was misled, *is* evidence that could go to meeting the reasonable consumer standard.  Plaintiff's experiences and perceptions are anecdotal evidence of a consumer finding Defendant's marketing deceiving.  *See Clemens*, 534 F.3d at 1026.  However, given the other two pieces of evidence noted by Plaintiff are not relevant to the reasonable consumer determination, Plaintiff's testimony is the extent of Plaintiff's remaining evidence and the only anecdotal evidence of this sort presented.  Plaintiff's testimony, when presented by itself, is only a single instance of a consumer being deceived by Defendant's marketing of Olympia Beer.  "[W]hile evidence of actual confusion may be used as evidence of the likelihood of confusion to the general public, a few isolated examples are generally insufficient and the plaintiff in such cases must show a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Brockey v. Moore*, 107 Cal. App. 4th 86, 99 (2003) (quotation marks omitted).  Plaintiff's testimony cannot meet the reasonable consumer standard on its own as it only represents an isolated example of a consumer being deceived.  *Clemens*, 534 F.3d at 1026; *see Schramm*, 2014 WL 12633527, at *10.  This

is especially true in a case such as here where Defendant has presented evidence of substantial strength in the form of a consumer survey and the opinions of a purported expert, which suggest that the elements of the Olympia Beer label highlighted by Plaintiff were not misleading to the reasonable consumer. (*See* Survey Report of Dr. Van.) Plaintiff's testimony alone would already be insufficient to meet his burden and the sufficiency of that evidence is even further degraded by the evidence presented by Defendant, such that no reasonable trier of fact could reach a contrary conclusion.

Accordingly, Plaintiff has failed to meet his burden to show that there exists a genuine issue of material fact as to whether a reasonable consumer would have been deceived by Defendant's marketing. *See Celotex*, 477 U.S. at 323; *Nissan Fire*, 210 F.3d at 1103. Defendant is entitled to judgment as a matter of law on Plaintiff's UCL claim as Plaintiff has failed to present evidence that would satisfy the reasonable consumer test, a required element of Plaintiff's claim. *Williams*, 552 F.3d at 938; *Clemens*, 534 F.3d at 1026; *see also Rahman v. Mott's LLP*, No. 13-cv-3482-SI, 2014 WL 5282106, at *10 (N.D. Cal. Oct. 15, 2014) (granting summary judgment for UCL claims where the plaintiff "failed to submit sufficient evidence to raise a genuine issue of fact as to whether a reasonable consumer would be deceived" by the Defendant's statements). As the UCL claim is Plaintiff's only claim in this action and Defendant's summary judgment motion will be granted on that claim, the Court need not reach the issue of whether Plaintiff had provided sufficient evidence to show he was entitled to damages.

////
////
////
////
////
////
////

**CONCLUSION**

In accordance with the above,  IT IS HEREBY ORDERED that:

1. Defendant's Motion for Summary Judgement (ECF No. 71) is GRANTED; and
2. The Clerk of the Court shall enter judgment for the Defendant and close the case.

IT IS SO ORDERED.

Dated:  **March 15, 2024**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC1 – peacock18cv00568.msj